NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2019 VT 16

No. 2018-161

| | |
|---|---|
| Darryl R. Montague | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Civil Division |
| | |
| Hundred Acre Homestead, LLC | December Term, 2018 |

Robert A. Mello, J.

Christina A. Jensen of Lisman Leckerling, P.C., Burlington, for Plaintiff-Appellant.

Ritchie E. Berger and Angela R. Clark of Dinse, Knapp & McAndrew, P.C., Burlington, for
  Defendant-Appellee.


PRESENT:  Reiber, C.J., Skoglund, Robinson and Eaton, JJ., and Morris, Supr. J. (Ret.),
          Specially Assigned


¶ 1.    **ROBINSON, J.**    This case calls for us to consider whether one who provides residential care for an individual has a tort-law duty to warn a potential victim of violence by that individual when that potential victim is neither individually identified or identifiable, nor a member of a discrete identified or identifiable class of potential victims.  Plaintiff Darryl Montague sued Hundred Acre Homestead, a therapeutic residential community, after a resident of Hundred Acre shot him at the shooting range he owned.  He invokes two theories of liability: first, that as the resident's mental-health provider, Hundred Acre breached a duty to take reasonable steps to

protect him from the resident by warning him of the danger she posed; and second, that Hundred Acre breached a duty to him by accepting and retaining the resident for care in violation of applicable Vermont regulations. Montague has appealed the superior court's dismissal of both. We conclude that both theories of negligence fail because neither establishes that Hundred Acre had a cognizable legal duty to protect Montague enforceable through a private tort action. We thus affirm.

¶ 2. Montague's complaint reflects the following. V.M. ("resident") began living at Hundred Acre, a licensed therapeutic community residence, in January 2015. As part of its intake process, Hundred Acre was required to comprehensively assess resident's history, including her current level of personal, social, familial, educational, and vocational adjustment, and to identify any major dysfunctions leading to her need for residential treatment. It was also required to review information from agencies, institutions, and programs she had previously used. It had to determine if it could safely and appropriately provide for her care needs, or if she had a serious, acute illness requiring the medical, surgical, or nursing care of a general or special hospital.

¶ 3. Resident had a history of mental illness that had resulted in multiple previous hospital admissions for psychiatric care, and for which she had been prescribed antipsychotic medications. She had a criminal record that included an order prohibiting her from purchasing or possessing a firearm or other weapons; an order restraining her from contacting certain persons; at least two past charges dismissed due to mental incapacity; and two convictions from the previous year for criminal assault in the third degree with intent to cause physical injury.

¶ 4. While at Hundred Acre, resident "inquired three times about wanting to go target shooting because that was a way for her to deal with aggression."

2

¶ 5.    On June 29, 2015, resident went to Vermont Target Sports,[1] a target-shooting facility, and shot its owner Darryl Montague in the head and abdomen, causing him severe injuries that will prevent him from ever being able to function normally again, and for which he will require constant medical attention for the rest of his life.

¶ 6.    In April 2017, Montague filed this action for damages, alleging that Hundred Acre was negligent because it knew or should have known that resident had a history of mental illness, a criminal record that included an order prohibiting her from possessing firearms and other weapons, and two recent criminal-assault convictions, and thus "knew or should have known that she posed a serious risk of danger to identifiable or foreseeable third parties."  He argued that Hundred Acre, as resident's mental-health provider, had a special relationship which imposed on it a duty to use reasonable care to protect foreseeable or identifiable victims of gun violence by resident, such as him—and that it failed to do so, directly and proximately causing his injuries. Montague also alleged that Hundred Acre was negligent because it violated Vermont regulations by accepting and retaining resident when she had needs for which it could not safely and appropriately provide, and that its breach of this duty directly and proximately caused his injuries.

¶ 7.    Hundred Acre moved to dismiss, arguing it owed no duty to Montague to warn or protect him from resident.  It noted that there is generally no duty to control the actions of another in order to protect a third party, and that the exception requiring mental-health professionals to take steps to protect identifiable victims to whom their patients pose a serious danger did not apply

---

[1]  While the complaint does not allege that Hundred Acre drove resident to a bus station, from which she traveled to Vermont Target Sports, Montague claimed this in his Opposition to Hundred Acre's motion to dismiss and on appeal, and Hundred Acre acknowledges in its appellate briefing that this was the case.  There is no allegation that Hundred Acre knew resident intended to go to a target-shooting range that day.  The additional claim that agents of Hundred Acre drove resident to the bus station on the day of the incident does not change our analysis.

in this case because Montague was not an identifiable victim. It also argued that the regulations Montague cited did not support a private action for damages by members of the general public because they were explicitly enacted for the protection of therapeutic-community residents.

¶ 8. The superior court dismissed Montague's claims, holding Montague had failed to establish Hundred Acre owed him a duty of care. It held Hundred Acre had no duty to warn Montague because Montague was not an identifiable victim, and rejected Montague's claim that Hundred Acre was negligent in accepting or retaining resident in violation of state regulations, namely the Licensing and Operating Regulations for Therapeutic Community Residences, §§ 4.15(b)(3), 5.1(a), because those regulations "do not create an actionable duty." Code of Vt. Rules 13-110-012 [hereinafter Licensing and Operating Regulations], https://dail.vermont.gov/ resources/regulations [https://perma.cc/2EMS-FR5V].

¶ 9. On appeal, Montague reiterates his two main arguments: first, Hundred Acre was negligent because, as resident's mental-health provider, it had a duty under Peck v. Counseling Service of Addison County, Inc., 146 Vt. 61, 499 A.2d 422 (1985), and our subsequent holding in Kuligoski v. Brattleboro Retreat, 2016 VT 54A, 203 Vt. 328, 156 A.3d 436, to protect her identifiable and foreseeable victims.[2] Montague argues he was both an identifiable and foreseeable victim because Hundred Acre knew or should have known of resident's "lengthy and significant history of violence, restraining orders, and threats of violence and mental illness, as well as that she was prohibited from purchasing or possessing firearms and had been prescribed antipsychotic medications" and because she had told Hundred Acre she wished to go target shooting to deal with her aggression. Montague contends that, in holding these facts were insufficient to put Hundred

---

[2] Montague notes that, while the Legislature enacted 18 V.S.A. § 1882 on May 30, 2017 to "limit mental health professionals' duty to that as established in common law by Peck," § 1882 does not apply to this action because it was enacted after Montague filed this action.

Acre on notice that resident posed a serious risk to Montague as an identifiable or foreseeable victim, the trial court improperly engaged in fact-finding at the motion-to-dismiss stage. Second, Montague argues that Hundred Acre was negligent because it violated 33 V.S.A. § 7111(d)(3) and the Licensing and Operating Regulations, which prohibit therapeutic residential communities from accepting and retaining residents whose residential care needs they cannot safely accommodate and from operating in a manner "inimical to the public health, morals, welfare, and safety," and which Montague argues were intended to protect public safety and thus define a duty of care toward third parties like him.

¶ 10. We review the trial court's decision on a motion to dismiss without deference, applying the same standard as the trial court. On a motion to dismiss, the court must assume that the facts pleaded in the complaint are true and make all reasonable inferences in the plaintiff's favor. Mahoney v. Tara, LLC, 2011 VT 3, ¶ 7, 189 Vt. 557, 15 A.3d 122. A court should grant a motion to dismiss for failure to state a claim only when "it is beyond doubt that there exist no facts or circumstances that would entitle [the plaintiff] to relief." Powers v. Office of Child Support, 173 Vt. 390, 395, 795 A.2d 1259, 1263 (2002). Because this "threshold a plaintiff must cross in order to meet our notice-pleading standard" is such a low one, "[m]otions to dismiss for failure to state a claim are disfavored and should be rarely granted." Bock v. Gold, 2008 VT 81, ¶ 4, 184 Vt. 575, 959 A.2d 990; V.R.C.P. 8 (requiring only that pleadings contain "short and plain statement of the claim showing that the pleader is entitled to relief"). The purpose of a dismissal motion "is to test the law of the claim, not the facts which support it." Powers, 173 Vt. at 395, 795 A.2d at 1263.

¶ 11. We are particularly wary of dismissing novel claims because "[t]he legal theory of a case should be explored in the light of facts as developed by the evidence, and, generally, not

5

dismissed before trial because of the mere novelty of the allegations." Ass'n of Haystack Prop. Owners, Inc. v. Sprague, 145 Vt. 443, 447, 494 A.2d 122, 125 (1985). Nonetheless, where the plaintiff does not allege a legally cognizable claim, dismissal is appropriate. Colby v. Umbrella, Inc., 2008 VT 20, ¶ 13, 184 Vt. 1, 955 A.2d 1082 (holding "our rules of civil procedure . . . strike a fair balance, at the early stages of litigation, between encouraging valid, but as yet underdeveloped, causes of action and discouraging baseless or legally insufficient ones").

¶ 12. We conclude that Montague has not alleged facts that would place this case within the narrow exception to the general rule that there is no duty to act to prevent harm by another to a third person, and that the regulations governing licensed therapeutic communities upon which Montague relies do not support Montague's private action for damages against Hundred Acre. Although our analysis is framed with reference to the sufficiency of Montague's factual allegations, it turns on the validity of his legal theories. That is, it turns on "the law of the claim, not the facts which support it." Powers, 173 Vt. at 395, 795 A.2d at 1263.

I. Violation of Mental-Health Provider's Duty to Protect

¶ 13. To survive a motion to dismiss, Montague must plead facts showing that Hundred Acre had a duty to prevent resident from harming him. There is generally no duty to protect another from the actions of a third person, and this case does not fall within any exceptions to this general rule.

¶ 14. In prosecuting a claim of negligence against Hundred Acre, Montague must allege facts establishing that Hundred Acre, as resident's mental-health provider, had a duty to protect him from resident. A claim for "common law negligence has four elements: a legal duty owed by defendant to plaintiff, a breach of that duty, actual injury to the plaintiff, and a causal link between the breach and the injury." Stopford v. Milton Town Sch. Dist., 2018 VT 120, ¶ 12, __ Vt. __, __

6

A.3d __ (quotation and alterations omitted). "The existence of a duty is a question of law to be decided by the court." Sorge v. State, 171 Vt. 171, 174, 762 A.2d 816, 818 (2000). Dismissal of a negligence action is appropriate where the plaintiff has not pled facts that, if true, could establish that the defendant had a duty of care to the plaintiff. See Sorge, 171 Vt. at 181, 762 A.2d at 823 (dismissing negligence action because defendant had no duty to control actions of another to prevent harm to plaintiff); Smith v. Day, 148 Vt. 595, 597 n.1, 538 A.2d 157, 158 n.1 (1987) (holding that without "a duty of care, an action for negligence must fail" (quotation omitted)).

¶ 15.    There is generally no duty to protect another from the actions of a third person. See Buxton v. Springfield Lodge No. 679, 2014 VT 52, ¶ 8, 196 Vt. 486, 99 A.3d 171 (holding governor of lodge had no duty to protect guest from other guests); Smith, 148 Vt. at 598, 538 A.2d at 159 (holding university had no duty to protect third persons from student); Restatement (Second) of Torts § 315 (1965) (explaining "[t]here is no duty so to control the conduct of a third person as to prevent" third person from harming another unless actor has special relationship with either other or third person that imposes such duty). For example, in Sorge v. State we considered whether the Department of Social and Rehabilitation Services (SRS) had a duty to supervise and take reasonable precautions to control the actions of a minor in its custody so as to prevent the minor from harming a member of the public. The plaintiff alleged that SRS knew the minor had "a history of violent, assaultive and delinquent behavior" but nonetheless temporarily put him in his mother's care, despite knowing that his "mother was either unlikely or incapable of adequately supervising him." Sorge, 171 Vt. at 173, 762 A.2d at 818. While in his mother's custody, the minor assaulted the plaintiff, a newspaper deliveryman. We acknowledged that, because SRS had taken custody of the minor for the purpose of rehabilitating him, it had a special relationship with him. We held, though, that this special relationship did not impose on SRS a duty to control the

7

minor to prevent him from harming others—instead, the general rule that there is no duty to protect another from a third person applied.

¶ 16. One limited exception to this general rule is that mental-health professionals, by virtue of their special relationship with their patients, have a duty to take reasonable action to protect identified third parties toward whom their patients have threatened serious physical harm. Peck, 146 Vt. at 63, 499 A.2d at 423. In Peck, a patient told his therapist he "wanted to get back at his father" because he did not think his father respected or cared about him. Id. at 64, 499 A.2d at 424. When the therapist asked how the patient would do that, the patient said he could burn down his father's barn. The patient subsequently set fire to the barn, destroying it. The patient's parents brought suit against the therapist, alleging the therapist was negligent in failing to take reasonable steps to protect them from harm. While we acknowledged the general rule that there is no duty to control the conduct of another to prevent harm to a third person, we held the patient-therapist relationship can create a special relationship that gives rise to " 'a duty to exercise reasonable care to protect a potential victim of another's conduct.' " Id. (citing Tarasoff v. Regents of the Univ. of Calif., 551 P.2d 334, 343 (Cal. 1976)). We noted that "Vermont already recognizes the existence of a special relationship between a physician and a patient that imposes certain legal duties on the physician for the benefit of third persons" such as duties to warn third parties of venereal diseases and other contagious conditions that a patient has. Id. We thus recognized a duty by a mental-health professional who "knows or, based upon the standards of the mental health profession, should know that [their] patient poses a serious risk of danger to an identifiable victim" to exercise reasonable care to protect that victim from that threat. Id. at 68, 499 A.2d at 427.

¶ 17. In the wake of Peck, this Court has struggled to determine the scope of the mental-healthcare provider's duty to protect potential victims. In Kuligoski, decided two years ago, the

8

Court was divided as to whether the Peck decision limits a mental-health provider's duty to protecting only specifically identified individuals who are at risk, or whether it potentially extends in some cases to individuals who have not been specifically identified. Compare Kuligoski, 2016 VT 54A, ¶ 38 ("Thus, while Peck finds a duty to warn an identifiable victim, it does not hold that liability is limited to those circumstances and in fact draws on public health cases where there is no identified victim.") with id. ¶¶ 88-96 (Reiber, C.J., dissenting) (reviewing range of approaches courts have taken with respect to existence and scope of mental-healthcare provider's duty and implicitly endorsing view that duty does not reach beyond serious threat to readily identified victim or perhaps determinate class of identifiable victims).[3]

¶ 18.    But the Court was not divided with respect to the proposition that Peck does not support a generalized duty to protect or warn all foreseeable victims. See Kuligoski, 2016 VT 54A, ¶ 41 ("We agree that the Peck holding does not apply to a duty to warn the general public."); id. ¶ 93 (Reiber, C.J., dissenting) (concluding that in Vermont, "where public policy militates against the recognition of a duty to control a patient through involuntary hospitalization . . . extending the duty to the public at large is not a sound or practical option"). Accordingly, insofar

---

[3]    Kuligoski recognized a duty to warn a caregiver in the zone of danger of a patient's dangerous propensities. We held this duty "applies only when a caregiver is actively engaging with the patient's provider in connection with the patient's care or the patient's treatment plan . . . , the provider substantially relies on that caregiver's ongoing participation, and the caregiver is . . . within the zone of danger of the patient's violent propensities." Id. ¶ 52. The Legislature subsequently passed a statute specifically negating this decision. See 18 V.S.A. § 1882. However, because the statute postdated the events giving rise to this claim, it does not apply to this case. See State v. Aubuchon, 2014 VT 12, ¶ 16, 195 Vt. 571, 90 A.3d 914 (noting that "[g]enerally, statutes operate only prospectively" (quotation omitted)). Accordingly, for purposes of this case, our decision in Kuligoski remains good law. Because Montague does not allege that he was a caregiver actively working with Hundred Acre on resident's treatment or case-discharge plan, and does not allege a failure to warn any caregivers at all, the duty we recognized in Kuligoski does not apply here.

9

as Montague argues that Hundred Acre owed a duty to protect him because he was a foreseeable victim, that claim fails as a matter of law.

¶ 19.     Moreover, even if this Court concluded that the duty recognized in Peck applies to "readily identifiable" victims, rather than only those actually identified, Montague's complaint would still fail to state a claim.  Many states apply the duty recognized in Peck to cases where a therapist knows or should know that a patient poses a specific threat to reasonably identifiable third persons, in addition to those who are actually identified.  See Kuligoski, 2016 VT 54A, ¶ 36 (noting that "several courts have limited the duty to identifiable victims, or a class of individuals whose injury is foreseeable because of their relationship or proximity to a specifically identifiable victim"); id. ¶ 94 (Reiber, C.J., dissenting) (explaining that most states balance "the competing concerns by recognizing a relatively narrow duty of care limited to situations where the therapist knows or should know that a patient poses a specific threat to an identified or reasonably identifiable third person").  This Court has never decided whether the duty recognized in Peck applies to identifiable (though not actually identified) members of a discrete and determinate class of people.

¶ 20.     Even if we concluded that it does, Montague's complaint would still fail to state a claim.  Montague alleges that while residing at Hundred Acre, resident "inquired three times about wanting to go target shooting because that was a way for her to deal with aggression."  He argues that these inquiries put Hundred Acre on notice that he, as the owner of a target-shooting facility, was part of a determinate class of potential victims that faced a particularized threat.  We do not agree that the allegation in Montague's complaint could support an inference that he was part of determinate and identifiable class that faced a particularized threat.  Resident's claimed statements do not support the inference that she posed a risk of violence toward anyone at all, let alone a class

10

of people that included Montague. Had she said to her care providers that she wanted to go to the gym to "blow off steam," that statement would not reasonably support an inference that she intended to harm someone, and would not give rise to a duty to protect anyone working at a health club. For these reasons, we reject Montague's first theory of liability.[4]

## II. Violation of Statute and Regulations

¶ 21. Montague next contends that Hundred Acre is liable for negligence because it violated Vermont statute[5] and regulations by operating in a manner "inimical to the public health, morals, welfare and safety of the people of Vermont," 33 V.S.A. § 7111(d)(3); Licensing and Operating Regulations § 4.15(b)(3), and by accepting and retaining a resident whose needs were beyond "what the residence is able to safely and appropriately provide." Licensing and Operating Regulations § 5.1(a). He argues that these laws establish and define a duty by Hundred Acre to him because "[p]roof of the violation of a safety statute" or regulation such as these "creates a prima facie case of negligence" regardless of whether the statute provides that its violation will result in civil liability, citing Cooper v. Burnor, 170 Vt. 583, 585, 750 A.2d 974, 976 (1999).

¶ 22. This second claim of negligence fails because the safety statute and regulations cited by Montague do not support a private action for damages by Montague against Hundred Acre. A court may in certain circumstances recognize a private right of action to remedy violation

---

[4] Montague argues that deciding these questions at the motion-to-dismiss stage requires improper judicial factfinding. We agree that courts should give a plaintiff the benefit of any reasonable inferences supported by the allegations in a complaint. But whether, even with such inferences, the alleged facts establish that Hundred Acre owed Montague a legal duty is a legal determination appropriate for resolution at the motion-to-dismiss stage. See Sorge, 171 Vt. at 181, 762 A.2d at 823.

[5] Hundred Acre points out that Montague did not raise a violation of the statute below. Even had Montague raised it below, it would not have altered the outcome, as neither the statute nor the regulations give rise to a private action for damages by Montague against Hundred Acre.

11

of a statute that does not otherwise provide a civil remedy. See Restatement (Second) of Torts § 874A (1979). But here, where the statute and associated regulations are not directed at protecting Montague, he cannot pursue a private action for damages on the basis that Hundred Acre allegedly violated them.

¶ 23.    Restatement (Second) of Torts § 874A provides a framework for determining whether a private action for damages is available to remedy the violation of a statute that does not expressly include a civil remedy.[6] Dalmer v. State, 174 Vt. 157, 167-68, 811 A.2d 1214, 1224 (2002) (applying ¶ 874A in evaluating whether violation of statute gives rise to civil tort remedy). The Restatement (Second) of Torts ¶ 874A explains:

> When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action.

---

[6] The parties and trial court relied on the principles set forth in § 286 of the Restatement (Second) of Torts to guide their analysis on this issue. We take this opportunity to reiterate the distinction between § 286 and § 874A. "Where a party has an existing legal duty to another, a safety statute may serve as rebuttable evidence that the defendant breached the applicable standard of care, thereby shifting the burden of production to the defendant." Sheldon v. Ruggiero, 2018 VT 125, ¶ 24, __ Vt. __, __ A.3d __ (citing Restatement (Second) of Torts § 286 (1965)). This is the lesson of Restatement (Second) of Torts § 286. The strand of common law reflected in § 286 does not govern the question whether a safety statute creates a privately enforceable legal duty. Id. ¶ 25. Rather, it provides that where a defendant owes a plaintiff a legal duty, safety statutes and regulations may "supply the standard of care in the face of [that] established common-law duty." Id. (emphasis added).

By contrast, Restatement (Second) of Torts § 874A supplies the framework for evaluating whether violation of a safety statute that does not expressly include a civil remedy can support a private action for damages. See id. ¶ 16 n.5. Montague is not relying on the statutes and regulations he cites to supply the standard of care to apply in the context of an established duty of care. Rather, he invokes the statute and regulations as the source a duty enforceable through a claim for damages. For that reason, we apply the framework of § 874A in analyzing the issue.

12

In order to recover in a tort action arising from a legislative provision, a plaintiff must show that (1) the plaintiff is a member of the group of people whom the legislation was intended to protect, and (2) "the interest invaded, the harm resulting to that interest and the hazard producing the harm were all within the purview of the legislative provision."[7] Id. cmt. i.

¶ 24. Considering these factors, we conclude that Montague is not entitled to sue Hundred Acre for damages on account of its alleged violations because it is clear from the plain language of 33 V.S.A. § 7111 and the Licensing and Operations Regulations that their overarching purpose is to protect the class of residents of long-term-care facilities, not members of the public generally.[8] The statement of purpose in the enabling statute regarding long term care facilities reflects that the purpose of the statutes is to "promote safe surroundings, adequate care, and humane treatment, safeguard the health of, safety of, and continuity of care to residents, and protect residents from the adverse health effects caused by abrupt or unsuitable transfer of such persons cared for in these facilities." 33 V.S.A. § 7101 (Emphasis added). The statute Montague cites on

---

[7] We note that we previously adopted several factors laid out by the United States Supreme Court in Cort v. Ash, 422 U.S. 66 (1975), for determining whether to recognize a private right of action based on a statutory violation where the statute does not already explicitly provide one. Carr v. Peerless Ins. Co., 168 Vt. 465, 474, 724 A.2d 454, 459 (1998). Those factors are: "(1) whether plaintiff is one of a class for whose 'especial benefit' the statute was enacted; (2) whether there is any indication of legislative intent, express or implied, to allow or deny a remedy; and (3) whether it is consistent with the legislative scheme to imply a remedy for the plaintiff." Id. at 473, 724 A.2d at 459. Since adopting these factors, we have not relied on them, and have referred instead to Restatement (Second) of Torts § 874A. See, e.g., Sheldon, 2018 VT 125, ¶ 16 n.5 (noting "this Court has repeatedly relied on" § 874A). We take this opportunity now to express what our decisions have suggested: that Restatement (Second) of Torts § 874A, not the standard articulated in Cort, which are similar but not identical to § 874A, is the proper framework for determining whether to accord a private right of action based on a statutory violation.

[8] Both the statute and regulations give the appropriate licensing agency, attorney general, and residents the right to bring actions to enjoin any violations of the statute and regulations, and they confer authority on the licensing agency to take other enforcement actions. 33 V.S.A. § 7111; Licensing and Operations Regulations § 4.15. But neither provides a private right of action for damages for members of the public generally.

appeal provides for the licensing agency to enforce its provisions "to protect residents." 33 V.S.A. § 7111(a). Moreover, the implementing regulations state that the "purpose of enforcement actions" under the regulations "is to protect residents." Licensing and Operations Regulations § 4.15. The statute does provide that the licensing agency may "suspend, revoke, modify, or refuse to renew a license" for "conduct inimical to the public health, morals, welfare, and safety of the people of the State of Vermont in the maintenance and operation of the premises for which a license is issued." 33 V.S.A. § 7111(d). But we cannot read the general language about the "people of the State of Vermont" as evincing an intent to protect the general public from residents, rather than an intent to protect members of the public in their capacity as residents of licensed facilities. See Lyons v. Chittenden Cent. Supervisory Union, 2018 VT 26, ¶ 13, __ Vt. __, 185 A.3d 551 (explaining that to extent possible, we interpret statute as unified whole).

¶ 25. We thus cannot find that Montague has a right to bring an action on the basis of either alleged violation—that Hundred Acre operated in a manner inimical to public safety, see 33 V.S.A. ¶ 7111(d), or that it accepted and retained a resident whose care needs exceeded what it could safely and appropriately provide for; see Licensing and Operations Regulations § 5.1(a). Far from furthering "the purpose of the legislation and . . . assur[ing] [its] effectiveness," recognizing such a cause of action would fly in the face of the statute's and regulations' plain language. Restatement (Second) of Torts § 874A.

Affirmed.

FOR THE COURT:

_____

Associate Justice

14