Filed 01/08/26

VERMONT SUPERIOR COURT
Chittenden Unit
175 Main Street
Burlington VT 05402
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 25-CV-2013

| | |
|---|---|
| SUSAN HOFFMAN, as Administrator of the Estate of Marilyn Hoffman, <br>        Plaintiff <br><br> v. <br><br> GM OPERATIONS, LLC d/b/a GREEN MOUNTAIN NURSING AND REHABILITATION CENTER, <br>        Defendants | DECISION ON MOTION |

## RULING ON DEFENDANT'S PARTIAL MOTION TO DISMISS

This wrongful death and survivor's action arises from a fall and injury in a nursing home that allegedly caused the death of Marilyn Hoffman. Plaintiff asserts several claims, including negligence, breach of contract, consumer fraud, and a violation of the Nursing Home Resident's Bill of Rights pursuant to 33 V.S.A. § 7301, *et seq.* Plaintiff also seeks punitive damages. Pursuant to Rule 12(b)(6) of the Vermont Rules of Civil Procedure, Defendant has moved for dismissal of the consumer fraud, Nursing Home Resident's Bill of Rights, and punitive damages claims (Counts III, IV, and VII). In opposing the motion to dismiss, Plaintiff dropped her Nursing Home Resident's Bill of Rights claim (Count IV). Thus, the Court addresses only the consumer fraud and punitive damages claims below. Plaintiff is represented by Brooks McArthur, Esq., and Defendant is represented by William Smart, Esq. For the reasons discussed below, the motion is DENIED.

### Alleged Facts

The following facts are alleged in the Complaint. The Court makes no finding as to their accuracy at this stage of the proceeding. Instead, the Court "must assume that the facts pleaded in the complaint are true and make all reasonable inferences in the plaintiff's favor." *Montague v. Hundred Acre Homestead, LLC*, 2019 VT 16, ¶ 10, 209 Vt. 514.

Defendant GM Operations, LLC operates and manages a nursing care facility under the name "Green Mountain Nursing and Rehabilitation Center" (hereinafter "Green Mountain") in Colchester. At all times relevant to this action, Green Mountain has offered long-term care and skilled nursing, subacute care, and rehabilitation services. Plaintiff Susan Hoffman is the Administrator of the Estate of Marilyn Hoffman. Marilyn Hoffman ("Decedent") was a resident of Green Mountain from June 15, 2018 through August 16, 2023.

On August 10, 2023, a licensed nursing assistant and employee/agent of Green Mountain was changing Decedent's bed linens while Decedent remained in bed. No other nursing home staff assisted the employee with changing Decedent's bed linens at that time. As Decedent was on her right side, the employee pulled the linens out from under Decedent, causing her to fall off the bed on to the floor. Decedent was lifted back into her bed with a "Hoyer lift" after the fall.

The next day, on August 11, 2023, nursing home staff contacted Decedent's daughter to notify her that Decedent had fallen off the bed the prior evening and that a Hoyer lift was used to put her back in bed. Staff also indicated that Decedent "seemed alright" and had "no injuries." Compl. ¶ 8. Later that same day, Decedent's daughter visited Decedent at Green Mountain. She observed Decedent moaning and groaning with her eyes closed. Decedent's roommates indicated that Decedent had been screaming and moaning all night.

Decedent's daughter reported her observations to nursing staff, who dismissed her concerns as signs of constipation. Decedent's daughter insisted that her mother be evaluated immediately. Staff then lifted up the blanket covering Decedent's legs and discovered a large bruise on the left leg. Decedent's daughter then insisted that her mother be further evaluated for injuries by a physician. Staff responded that an x-ray technician would not be available until three days later. Decedent's daughter continued to insist, and an x-ray technician ultimately came in that same day and a fracture was discovered in Decedent's lower left extremity.

After a physician confirmed a fracture, Green Mountain did not have any braces in stock to put on Decedent's leg, so one was made from cardboard and a compression sock. Decedent was then given pain medication almost 24 hours after the injury occurred. Decedent suffered significant personal injuries as a result of the fall. In the days following the injury, Decedent's health significantly declined and she passed away on August 16, 2023.

## Discussion

Defendant seeks dismissal of the consumer fraud and punitive damages claims. In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court considers whether "it appears beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." *Davis v. Am. Legion, Dep't of Vt.*, 2014 VT 134, ¶ 12, 198 Vt. 204 (quoting *Alger v. Dep't of Labor & Indus.*, 2006 VT 115, ¶ 12, 181 Vt. 309). The Court "must assume that the facts pleaded in the complaint are true and make all reasonable inferences in the plaintiff's favor." *Montague*, 2019 VT 16, ¶ 10. The burden on plaintiffs under Vermont law is "exceedingly low" at the pleading stage. *Prive v. Vt. Asbestos Group*, 2010 VT 2, ¶ 14, 187 Vt. 280. Complaints are intended to give enough notice to the defendant to allow a response, but need not lay out every detail of the facts supporting the claim. *See Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 13, 184 Vt. 1 ("The complaint is a bare bones statement that merely provides the defendant with notice of the claims against it."). The goal is to "strike a fair balance, at the early stages of litigation, between encouraging valid, but as yet underdeveloped causes of action and discouraging baseless or legally insufficient ones." *Id*. As such, motions to dismiss for failure to state a claim are "disfavored." *Bock v. Gold*, 2008 VT 81, ¶ 4, 184 Vt. 575. "Nonetheless, where the plaintiff does not allege a legally cognizable claim, dismissal is appropriate." *Montague*, 2019 VT 16, ¶ 11.

2

I.        Consumer Protection Act.

Plaintiff alleges that Defendant engaged in unfair or deceptive acts or practices in commerce.[1]  Vermont's Consumer Protection Act prohibits "unfair or deceptive acts or practices in commerce."  9 V.S.A. § 2453(a).  "To sustain a consumer-protection claim, a plaintiff must (1) prove facts that meet the definition of an unfair or deceptive act under 9 V.S.A. § 2453(a), and (2) demonstrate the prerequisites to a private action under 9 V.S.A. § 2461(b)."  *Mansfield v. Heilmann, Ekman, Cooley & Gagnon, Inc.*, 2023 VT 47, ¶ 32, 218 Vt. 359 (citing *Dernier v. Mortg. Network, Inc.*, 2013 VT 96, ¶ 56, 195 Vt. 113).

An "unfair" act "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition."  15 U.S.C.A. § 45(n); *see also* 9 V.S.A. § 2453(b) (in deciding whether an act or practice is "unfair or deceptive" under the Consumer Protection Act, "the courts of this State will be guided by the construction of similar terms contained in Section 5(a)(1) of the Federal Trade Commission Act [9 U.S.C. § 45] as from time to time amended by the Federal Trade Commission and the courts of the United States").  To establish a "deceptive act or practice" under the Act requires three elements: "(1) there must be a representation, omission, or practice likely to mislead consumers; (2) the consumer must be interpreting the message reasonably under the circumstances; and (3) the misleading effects must be material, that is, likely to affect the consumer's conduct or decision regarding the product."  *Madowitz v. Woods at Killington Owners' Ass'n, Inc.*, 2014 VT 21, ¶ 23, 196 Vt. 47 (citation omitted).  "To maintain a private action under § 2461(b), a plaintiff must show either (1) reliance on a deceptive act in contracting for goods or services or (2) damages or injury from an unfair or deceptive act."  *Mansfield*, 2023 VT 47, ¶ 34.  For reliance claims, "no actual injury is required."  *Id*.  For damages claims, "a plaintiff must prove causation and injury."  *Id*. (citation omitted).

Specifically, Plaintiff alleges that Defendant falsely represented that it was "skilled" at providing the "scope and quality of care" that Decedent required in June of 2018, and that Plaintiff reasonably relied upon that representation.  Compl. ¶ 36.  Plaintiff further alleges that Defendant failed to provide Decedent with the level of care and supervision that it knew she required, that it knew or should have known that it was unable to provide Decedent with that level of care, and that it "failed to disclose" its inability to provide such care.  *Id*. ¶¶ 37-39.

The representation that Defendant was "skilled" at providing the care that Decedent needed is a statement of opinion, and therefore cannot constitute a deceptive act.  *See Lynn v. Slang Worldwide, Inc.*, 2025 VT 30, ¶ 11 ("In analyzing claims of fraud, this Court has consistently distinguished statements of fact from statements of opinion.  Misrepresentation of the former can be fraud, but misrepresentation of the latter cannot . . . ." (quotation omitted)); *PH W. Dover Prop., LLC v. Lalancette Eng'rs*, 2015 VT 48, ¶ 12, 199 Vt. 1 (same); *Heath v. Palmer*, 2006 VT 125, ¶ 14, 181 Vt. 545 (same).  The alleged representation here of "skilled"

---

[1] Plaintiff also alleged that Defendant engaged in "unfair methods of competition," Compl. ¶ 40, but did not respond to Defendant's argument on that specific point.  *See* Def.'s Mot. to Dismiss at 4-5.  Thus, to the extent Plaintiff's consumer protection claim relies on a theory of "unfair methods of competition," Plaintiff has waived that theory.

care "unquestionably fall[s] within the category of opinion as subjective evaluations of workmanship rather than objectively verifiable statements of fact." *Heath*, 2006 VT 125, ¶ 14.

However, the separate allegations that Defendant "failed to disclose that they were unable to provide Decedent with the care she required" and that they "knew or should have known" that they were unable to provide that care, Compl. ¶¶ 38-39, are different. Whether Defendant could or could not provide Decedent with the care that she required is not an opinion, but a fact capable of objective verification. Moreover, it is a material omission of fact. A disclosure that a nursing home could not provide the level of care that a prospective patient requires would lead any reasonable consumer not to pursue the services of that nursing home for that patient. The Complaint's allegations show that Plaintiff reasonably relied on the omission of that material fact by admitting Decedent to Green Mountain, and that the omission ultimately caused harm to Decedent. Whether Plaintiff can marshal sufficient facts to support her consumer protection claim on summary judgment or at trial remains to be seen. At this stage, however, her allegations are sufficient to survive a motion to dismiss.

Punitive Damages

Plaintiff claims that she is entitled to punitive damages.[2] More specifically, she alleges that Defendant's "actions and omissions were in violation of federal and state law and regulation" and of its "own policies and procedures," Compl. ¶ 55, that Defendant "further misrepresented the facts of Decedent's fall and injuries to her family, and to others, in an effort to minimize Defendant's wrongful conduct," *id*. ¶ 56, and that Defendant's "actions and omissions were grossly negligent, reckless, willful, wanton and malicious, or rose to the level of same." *Id*. ¶ 57. Plaintiff further alleges that Defendant was "on notice of the dangers presented to residents who were prone to falls and . . . of the methods and means by which residents prone to falls could be supervised and protected," yet "failed to institute any of these safeguards." *Id*.

In Vermont, punitive damages require "outrageously reprehensible" conduct accompanied by "malice." *Fly Fish Vermont, Inc. v. Chapin Hill Estates, Inc.*, 2010 VT 33, ¶ 18, 187 Vt. 541. "Outrageously reprehensible" conduct means "wrongdoing" that "has the character of outrage frequently associated with crime." *Id*. "Malice" is "defined variously as bad motive, ill will, personal spite or hatred, reckless disregard, and the like." *Id*. Much of Plaintiff's allegations here demonstrate conduct that may have been wrongful and negligent, but that does not rise to the high level of outrage and malice. One example is the allegation that Defendant violated laws, regulations, policies, and procedures. "Willful violation of the law is insufficient evidence of malice, if not accompanied by a showing of bad faith." *Bolsta v. Johnson*, 2004 VT 19, ¶ 7, 176 Vt. 602 (quotation omitted).

However, the allegation that Defendant "ignored [Decedent's] screams and emotional distress in response to the extensive pain that she was in for almost 24 hours" could demonstrate

---

[2] Although Plaintiff has pled punitive damages as a separate count in Count VII, a claim of punitive damages is not a separate cause of action. Rather, it is a category of damages and a remedy that could only be awarded if Plaintiff prevailed on a separate, underlying claim. As such, it is rarely appropriate for consideration on a motion to dismiss.

4

outrageous conduct. And the alleged misrepresentation of Decedent's fall and injuries to her family could demonstrate that Defendant acted intentionally in delaying treatment, even though that took place after the fall. Moreover, the alleged failure to institute safeguards despite being on notice of the dangers to patients prone to falls and of the ways to prevent such falls could rise to the level of malice under a "conscious disregard" theory. *See Fly Fish Vermont*, 2010 VT 33, ¶¶ 24-25 (concluding that "the conscious disregard of a known and sufficiently serious risk of harm is the equal of malice"). Thus, the Court concludes that Plaintiff may pursue her claim for punitive damages through discovery and factual development to determine whether she can establish actual malice.

The Court notes, however, that this may be an uphill climb for Plaintiff. "Generally, when punitive damages are sought against a corporate entity, the malicious or unlawful act relied upon must be that of the governing officers of the corporation or one lawfully exercising their authority." *Post & Beam Equities Group, LLC v. Sunne Vill. Dev. Prop. Owners Ass'n*, 2015 VT 60, 199 Vt. 313 (quotation omitted). Mere "inaction or inattention of senior corporate officers" does not "constitute[] malice sufficient to establish punitive damages liability." *Brueckner v. Norwich Univ.*, 169 Vt. 118, 130-31, 730 A.2d 1086, 1096 (1999). But as the Court indicates above, a motion to dismiss typically is not the time to test whether the facts of the case will support such relief.

<u>Order</u>

For the foregoing reasons, Defendant's motion to dismiss (Mot. # 1) is DENIED.

Defendant shall file an amended answer in light of the Court's decision within 14 days, and the parties shall submit a proposed discovery schedule within 14 days thereafter.

Electronically signed on January 8, 2026 at 10:15 AM pursuant to V.R.E.F. 9(d).

_____
Megan J. Shafritz
Superior Court Judge