Filed 03/04/26

VERMONT SUPERIOR COURT
Chittenden Unit
175 Main Street
Burlington VT  05402
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 25-CV-3042

|  |  |
|---|---|
| KHALID ULLAH SAHAR,<br>  Plaintiff<br><br>  v.<br><br>CITY OF BURLINGTON, CITY OF SOUTH BURLINGTON, TOWN OF COLCHESTER, CHITTENDEN UNIT FOR SPECIAL INVESTIGATIONS, INC.,<br>  Defendants | DECISION ON MOTIONS |

## RULING ON DEFENDANTS' MOTIONS TO DISMISS

Plaintiff Khalid Ullah Sahar, a refugee from Afghanistan, brings this action against the Cities of Burlington and South Burlington, the Town of Colchester, and the Chittenden Unit for Special Investigations ("CUSI") in connection with a July 2022 encounter with law enforcement. He alleges that police detectives employed by Defendants violated Article 10 of the Vermont Constitution by subjecting him to a custodial interrogation, and by doing so without an interpreter. Defendants Burlington, South Burlington, and CUSI each separately seek dismissal under Rule 12(b)(6) of the Vermont Rules of Civil Procedure for the same reasons. For the reasons discussed below, the motions to dismiss are GRANTED.

### Facts

The following facts are alleged in the Complaint. The Court makes no finding as to their accuracy at this stage of the proceedings. Instead, the Court "must assume that the facts pleaded in the complaint are true and make all reasonable inferences in the plaintiff's favor." *Montague v. Hundred Acre Homestead, LLC*, 2019 VT 16, ¶ 10, 209 Vt. 514.

Plaintiff is an Afghan refugee paroled into the United States in 2021 due to the collapse of the Afghan government to the Taliban and was later granted asylum status. In 2022, he settled in Burlington with the help of the Vermont Afghan Alliance and started working in a cell phone repair shop. At this time, Plaintiff did not speak or understand English well.

Victor Bitca and Daniel Boyar are law enforcement officers with the Colchester and South Burlington Police Departments, respectively. At all times relevant to this case, they were assigned to CUSI, a non-profit corporation that operates as a law enforcement agency investigating sex crimes and staffed by officers assigned to it from other agencies in Chittenden

County. The Burlington Police Department supervises and manages the day-to-day operations of CUSI and is responsible for the actions of officers assigned to CUSI.

In July 2022, a woman reported to Burlington Police, through her Howard Center caseworker, that she had been sexually assaulted by Plaintiff in the cell phone store where he worked. The Burlington Police started an investigation into the report.

On July 29, 2022, Detectives Boyar and Bitca, acting for CUSI, went to the cell phone store to question Plaintiff. They prevented anyone else from entering the store while they questioned him. They positioned themselves to block Plaintiff into a corner, such that he would have been unable to leave without pushing through the detectives. They did not inform Plaintiff of his criminal due process rights.

During this encounter, Plaintiff stated several times that he did not understand the detectives' questions. Detective Bitca asked if Plaintiff wanted an interpreter, but Detective Boyar continued asking questions without waiting for a response. They continued to question Plaintiff even though it was clear that he did not understand everything they said. Plaintiff was afraid of the detectives and believed that he was not free to leave and had to answer their questions.

The detectives took several of Plaintiff's statements out of context as admissions and relied on them to charge him with sexual assault. Plaintiff alleges that, in context, it is clear that his statements were not admissions, but rather "linguistic artifacts caused by [his] difficulty speaking and understanding English." Compl. ¶ 26. Plaintiff is in fact innocent of the crimes he was charged with. The complaining witness later recanted during her deposition in the criminal case, and the State dismissed the criminal charges with prejudice.

Plaintiff brings two claims, titled "Custodial Interrogation" and "Failure to Provide Interpreter." He alleges that the detectives "violated [his] rights under Article 10 by interrogating him in circumstances in which a reasonable person would not feel free to leave" and "by interrogating him without an interpreter, preventing [him] from understanding his rights, and preventing [him] from understanding the questions they asked." Compl. ¶¶ 30, 33. He suggests that his statements to the detectives were "compelled." *Id*. ¶¶ 29, 32. He seeks damages for the alleged violation of his constitutional rights. *Id*. ¶¶ 31, 34.

<u>Discussion</u>

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court considers whether "it appears beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." *Davis v. Am. Legion, Dep't of Vt.*, 2014 VT 134, ¶ 12, 198 Vt. 204 (quoting *Alger v. Dep't of Labor & Indus.*, 2006 VT 115, ¶ 12, 181 Vt. 309). The Court "must assume that the facts pleaded in the complaint are true and make all reasonable inferences in the plaintiff's favor." *Montague*, 2019 VT 16, ¶ 10. The burden on plaintiffs under Vermont law is "exceedingly low" at the pleading stage. *Prive v. Vt. Asbestos Group*, 2010 VT 2, ¶ 14, 187 Vt. 280. Complaints are intended to give enough notice to the defendant to allow a response, but need not lay out every detail of the facts supporting the claim. *See Colby v. Umbrella, Inc.*, 2008

VT 20, ¶ 13, 184 Vt. 1 ("The complaint is a bare bones statement that merely provides the defendant with notice of the claims against it."). The goal is to "strike a fair balance, at the early stages of litigation, between encouraging valid, but as yet underdeveloped causes of action and discouraging baseless or legally insufficient ones." *Id*. As such, motions to dismiss for failure to state a claim are "disfavored." *Bock v. Gold*, 2008 VT 81, ¶ 4, 184 Vt. 575. "Nonetheless, where the plaintiff does not allege a legally cognizable claim, dismissal is appropriate." *Montague*, 2019 VT 16, ¶ 11.

Defendants Burlington, South Burlington, and CUSI all seek dismissal. They contend that Plaintiff cannot recover damages for alleged Article 10 violations and that the alleged facts do not amount to a custodial interrogation. Additionally, CUSI argues that violations of the privilege against self-incrimination can occur only during criminal prosecutions, and the municipal Defendants argue that the claims are barred by qualified immunity.

Article 10 provides "[t]hat in all prosecutions for criminal offenses," a person cannot "be compelled to give evidence against oneself." Vt. Const. ch. I, art. X. This right against self-incrimination is similarly "guaranteed in the Fifth Amendment to the United States Constitution, which prohibits compelling a criminal defendant to 'be a witness against himself.'" *State v. Peterson*, 2007 VT 24, ¶ 17, 181 Vt. 436 (quoting U.S. Const. amend. V). "[T]he Article 10 privilege against self-incrimination and that contained in the Fifth Amendment are synonymous." *State v. Rheaume,* 2004 VT 35, ¶ 18, 176 Vt. 413.

"To safeguard this right, law enforcement officers must warn a person in custody, prior to interrogation, 'that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.'" *State v. Fleurie,* 2008 VT 118, ¶ 11, 185 Vt. 29 (quoting *Miranda v. Arizona,* 384 U.S. 436, 444 (1966)). "*Miranda* warnings serve to ensure that the person in custody has sufficient knowledge of his constitutional rights concerning the interrogation and that any waiver of such rights is knowing, intelligent, and voluntary." *State v. Brooks*, 2013 VT 27, ¶ 10, 193 Vt. 461. Defendants contend that Plaintiff cannot recover damages for a *Miranda* violation alone, and federal law is in accord. "*Miranda* warnings are a procedural safeguard rather than a right explicitly stated in the Fifth Amendment. The remedy for a *Miranda* violation is the exclusion from evidence of any ensuing self-incriminating statements[,] . . . not a § 1983 action." *Neighbour v. Covert*, 68 F.3d 1508, 1510 (2d Cir. 1995). Thus, a "*Miranda* . . . violation, standing alone, would not form a basis for liability under §1983." *Id*. at 1511. In 2022, the U.S. Supreme Court squarely held that a *Miranda* violation alone cannot form the basis for a § 1983 action. *Vega v. Tekoh*, 597 U.S. 134, 152 (2022).

Plaintiff's complaint, however, does not rest on a *Miranda* violation alone. Rather, he suggests that, notwithstanding the lack of *Miranda* warnings, his admissions were "compelled" in violation of Article 10. Compl. ¶¶ 29, 32. Our Supreme Court has not yet decided whether Article 10 provides a private cause of action. This Court notes that while the existence of a private cause of action for money damages based on unconstitutional searches and seizures is well-established both federally and in Vermont, *see, e.g.*, *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971); *Zullo v. State*, 2019 VT 1, ¶ 47, 209 Vt. 298, that is not the case for coerced confessions, even at the federal level:

> [T]here has been relatively little litigation under § 1983 to enforce this provision of the Fifth Amendment. Usually questions concerning the voluntariness of a confession are raised in the context of a criminal proceeding.
>
> Part of the reason for the small number of civil cases may relate to the difficulty in proving damages. If there has in fact been a violation of the Fifth Amendment, presumably the confession will be inadmissible. If the confession is not used in the criminal proceedings, then it is difficult for the § 1983 plaintiff to show actual harm.

I. Bodensteiner and R. Levinson, 1 *State and Local Government Civil Rights Liability* § 1:13 (May 2024 update) (footnotes omitted). The Second Circuit has held that "a § 1983 action may exist under the Fifth Amendment self-incrimination clause if coercion was applied to obtain a waiver of the plaintiffs' rights against self-incrimination and/or to obtain inculpatory statements, and the statements thereby obtained were used against the plaintiffs in a criminal proceeding." *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998). Even if a statement was coerced, however, "there can be no Fifth Amendment violation until that statement is introduced against the defendant in a criminal proceeding" which, "[i]n some situations," may include "use of these statements in pre-trial settings." *Id*. at 346-47; *see also Chavez v. Martinez*, 538 U.S. 760, 767 (2003) (violation of self-incrimination clause does not occur until statements are used against declarant in criminal case); 1 Nahmod, *Civil Rights & Civil Liberties Litigation: The Law of Section 1983* § 3:24 (Sept. 2025 update) ("Even clearer examples of Fifth Amendment violations for § 1983 purposes are those cases in which a confession is in fact improperly obtained through coercion and then used at trial.").

Of course, this is not a § 1983 action, but a claim brought directly under Article 10. Our Supreme Court has "established a two-step inquiry to determine whether monetary damages are available directly under a particular constitutional provision": (1) "whether the constitutional provision at issue is self-executing in the sense that it is specific enough to support an action against the state or state officials absent implementing legislation"; and (2) "whether monetary damages are available as a remedy for a violation because of the absence of any viable alternative remedy." *Zullo v. State*, 2019 VT 1, ¶ 33, 209 Vt. 298 (citation and quotation omitted); *see also id*. ¶ 47 (concluding, as a matter of first impression, that a direct private right of action for money damages is available for violations of Article 11's search and seizure provision).

This Court agrees with Judge Sessions's non-binding yet persuasive conclusion that "Article 10 is self-executing; it sets forth specific rights, has no legislative directive, and the ability to seek redress for infringements of Article 10 'comports with the general constitutional scheme.'" *Billado v. Parry*, 937 F. Supp. 337, 345 (D. Vt. 1996) (quoting *Shields v. Gerhart*, 163 Vt. 219, 227, 658 A.2d 924, 930 (1995)). The Court cannot conclude, however, that monetary damages are available for Plaintiff's alleged Article 10 violation. Here, Plaintiff had a "viable alternative remedy" in that he could have sought to suppress the allegedly compelled admissions in his criminal case or otherwise challenged the finding of probable cause. *Zullo*, 2019 VT 1, ¶ 33. Indeed, Plaintiff concedes as much: "It is possible that Mr. Sahar could have

sought suppression of the statements he made to the Officers in the course of the criminal case against him." Pl.'s Opp'n at 3, dated Nov. 20, 2025. While he argues that suppression was "not a meaningful alternative remedy in this particular case" because he was "actually innocent" and because the State "dismissed the case with prejudice of its own accord after the complaining witness recanted during her deposition," *id*., that does not negate the fact that Plaintiff could have sought to suppress the statement he made to the police officers while the criminal proceeding was pending. Thus, there was not an "absence of *any viable* alternative remedy." *Zullo*, 2019 VT 1, ¶ 33 (emphasis added).[1]

Given the Court's conclusion that Plaintiff has no private right of action for damages under Article 10 on the present set of allegations, the Court need not address Defendants' alternative arguments for dismissal.

Order

For the foregoing reasons, the Court GRANTS Defendants' motions to dismiss (Mots. # 2, 7, 8).

Consistent with the Court's ruling, Plaintiff's claims against the Town of Colchester will also be dismissed unless either party files an objection within 14 days of the date of this Order explaining why the claims should not be dismissed.

Electronically signed on March 2, 2026 at 2:54 PM pursuant to V.R.E.F. 9(d).

Megan J. Shafritz
Superior Court Judge

---

[1] Accordingly, this case is distinguished from *Zullo*, 2019 VT 1, ¶ 38, where the Court held that "the standard remedy" provided by "the exclusionary rule" afforded no relief to the plaintiff, "who was not charged with a crime." *See also id*. ¶ 55 (holding that a plaintiff in an action for damages "based on a law enforcement officer's alleged violation of [a] constitutional provision must show that . . . there is no meaningful alternative remedy in the context of that particular case").