Greco, J.
This is a Dist/Mun. Cts. R. A. D. A, Rule 8C, appeal by plaintiff Raymond M. Hayes (“Hayes”) of the dismissal of his complaint for “malicious abuse of process” brought against Ira H. Zaleznik (“Zaleznik”), an attorney. Zaleznik has, in turn, appealed the trial judge’s refusal to award him attorney’s fees upon that dismissal. This current litigation is the culmination of almost two decades of administrative and judicial clashes between the City of Revere and Hayes, a former police officer in that City. To represent it in those various proceedings, the City hired Zaleznik, a private attorney.
While all the facts underlying the prior matters are not germane to the legal issues on this appeal, some context is useful. After being on the job for six years and after experiencing chest pain and lightheadedness while on a high speed police chase, Hayes unsuccessfully sought compensation under a statute affording sick leave to officers disabled in the line of duty. A Superior Court judge found that Hayes’ condition was not work-related. That decision was affirmed by the Appeals Court A subsequent application for accidental disability retirement also Med. When Revere’s police chief ordered Hayes back to work, he failed to return on the grounds of his disability. The City then fired him because he did not obey the order to report for work and because he was permanently unable to perform all police duties. Hayes’ appeal from that action to the Civil Service Commission was dismissed as untimely, and the dismissal was upheld by the Superior Court and the Appeals Court Having Med in these various attempts to be compensated as a *108 disabled worker, Hayes finally sought a termination retirement allowance for which he claimed he was eligible on the basis that he had been a police officer for more than six years. However, the Revere Retirement Board denied his request pursuant to G.L.c. 32, §10(2) (c), which provides that an employee “who is removed or discharged for violation of the law, rules and regulations applicable to his office or position ... shall not be entitled to the termination retirement allowance.” The Board took the position that Hayes’ failure to return to work as ordered constituted such a violation. The Board was reversed, however, by an administrative law judge who awarded the allowance to Hayes. The decision of that judge was upheld throughout appeals to the Contributory Retirement Appeal Board (“CRAB”), the Superior Court, and the Appeals Court
As previously noted, defendant Ira Zaleznik represented the City of Revere in all of the above proceedings. Sometime between the decisions of the Superior Court and the Appeals Court, Hayes filed this suit against Zaleznik personally. Hayes’ complaint alleged that Zaleznik’s various filings with CRAB and in the Superior Court and the Appeals Court amounted to “the abuse of those civil processes for the accomplishment of an ulterior purpose inconsistent with the legitimate purposes of those processes; to wit, the malicious and intentional attempt to thwart [Hayes’] rightful and legitimate entitlements to termination retirement benefits.” In addition, Hayes alleged that Zaleznik filed the various appeals on behalf of the City in retaliation for Hayes’ filing of a complaint against him with the Office of Bar Counsel in December, 1996.
In response, Zaleznik filed what purported to be a special motion to dismiss pursuant to G.L.c. 231, §59H, the so-called “anti-SLAPP statute.” Zaleznik claimed that Hayes’ suit was a “Strategic Lawsuit Against Public Participation” in that it was based on his right to petition an executive or judicial body. Zaleznik added, however, two non-SLAPP related grounds to his motion; to wit, that any statements made by an attorney in the conduct of litigation are privileged, and that Hayes had failed to state a claim for which relief could be granted because Zaleznik’s actions did not amount to an abuse of process as a matter of law. The trial judge allowed the motion to dismiss under §59H and also on the basis of privilege. While §59H provides that if such a special motion is granted, the court “shall award the moving party costs and reasonable attorney’s fees,” the trial judge did not award either to Zaleznik. The court noted that Zaleznik was acting as his own attorney, that the Revere Retirement Board (not a party to this action) was obligated to indemnify him and had, in fact compensated him for his services, and that Zaleznik was not obligated to reimburse the Board if he recovered fees.
1. As noted by the Supreme Judicial Court in Duracraft Corp. v. Holmes Products Corp., 427 Mass. 156 (1998),
SLAPP suits have been characterized as ‘generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so.’ Wilcox v. Superior Court, 27 Cal. App. 4th 809, 816-817 (1994). ... The object of SLAPP suits is not to win them, but to use litigation to intimidate opponents’ exercise of rights of petitioning and speech [emphasis supplied].
Id. at 161. Specifically, G.L.c. 231, §59H provides that where a party believes a claim has been brought against him “based on ... [his] exercise of [his] right of petition under the constitution of the United States or of the commonwealth, ... [he] may bring a special motion to dismiss.” That motion is to be granted unless the party bringing the claim shows that “(1) the moving party’s exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving parry’s acts caused actual damage to the responding party.” While the City of Revere’s filings with CRAB and the courts unquestionably *109 constituted petitions to executive and judicial bodies, they were made not on behalf of a common citizen, but on behalf of a governmental entity. In determining whether §59H applies to such petitions, we must interpret that statute “according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to he accomplished, to the end that the purpose of its framers may be effectuated.” Acting Super. of Bournewood Hospital v. Baker, 431 Mass. 101, 104 (2000), quoting from Hanlon v. Rollins, 286 Mass. 444, 447 (1934).
It is useful in this case to consider first the “cause of [§59H’s] enactment, the mischief... to be remedied and the main object to be accomplished.” Id. As noted in Duracraft, supra at 161, “[t]he typical mischief that [such] legislation intended to remedy was lawsuits directed at individual citizens of modest means for speaking publicly against development projects.” In quoting Wilcox, the Supreme Judicial Court broadened §59H’s net by generally referring to “meritless suits” brought by any large private interest “to deter common citizens from exercising their political or legal rights or for punishing them for doing so,” and went even a step further by not requiring that the exercise of petition involve “a matter of public concern.” Duracraft, supra at 161, 164. Indeed, in McLarnon v. Jokisch, 431 Mass. 343 (2000), the Court held that seeking an abuse order under G.L.c. 209A constituted the exercise of a right of petition so as to invoke the protection of §59H. Id. at 347. In no instance, however, has that statute been applied to the exercise of a right of petition by a governmental entity. Moreover, it would not appear that the commentators on this subject ever contemplated that SLAPP statutes would apply to the petitioning of the government itself. See, for example, George W. Pring, SLAPPs: Strategic Lawsuits Against Public Participation, 7 Pace Envtl. L. Rev. 3, 8 (1989), cited by the Supreme Judicial Court in Duracraft, supra at 161-162, where “targets” of SLAPPs were described as “typically not extremists or experienced activists, but normal, middle-class and blue-collar Americans, many on their first venture into the world of government decision making” and where to qualify as a SLAPP for purposes of Pring’s study, the action had to have been “filed against non-governmental individuals and/or groups.” See also John C. Barker, Common Law and Statutory Solutions to the Problem of SLAPPs, 26 Loy. L.A.L. Rev. 395, 397 (1993), cited in Milford Power Ltd. Partner v. New England Power, 918 F. Supp. 471, 488 (D. Mass. 1996) (“SLAPPs have an additional political dimension, however, that distinguishes them from other harassment suits. Citizen participation in self-government is at stake, implicating the constitutional right to petition the government for redress of grievances.”); Note, Tired of Being SLAPPed Around: States Take Action Against Lawsuits Designed to Intimidate and Harass, 25 Rutgers L.J. 401, 402 (1994), also died in Milford Power. (“SLAPPs are a recent and growing phenomenon detrimentally affecting the ability and desire of private dtizens to participate in governmental processes.”).
In next examining whether the “words” used in §59H are consistent with the apparent purpose of the law, we need not rely on the rule of statutory construction that “a strictly literal construction of a statute is not necessarily to be adopted if the result will be to thwart or hamper the accomplishment of the obvious purpose of the act and if another interpretation which will not have such effect is possible.” Frye v. School Comm. of Leicester, 300 Mass. 537, 538 (1938). Here, the literal language of the statute supports the interpretation that a petition filed by a governmental entity is beyond its scope. The claim against Zaleznik is not based on his “exerdse of [his] right of petition under the constitution of the United States or of the commonwealth,” as is required if the statute is to apply. There is no indication here that the appeals by the City of Revere to CRAB and the courts were premised on anything other than the statutory provisions set forth in Chapters 32 and 30A of *110 the General Laws as opposed to a provision found in the state or federal constitution. Moreover, Zaleznik was not exercising any right of his own, but was merely acting on behalf of the City in the exercise of its statutory right to seek review. By contrast, however, the constitutional underpinnings of a private party’s right of petition are readily found in Article XI of the Massachusetts Declaration of Rights (“Every subject of the commonwealth ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property or character. He ought to obtain right and justice freely, and without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws”).
To be sure, “a party’s exercise of its right of petition” is broadly defined in §59H to encompass
any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government
However, all of the provisions in §59H “should be construed together so as to constitute a harmonious whole consistent with the legislative purpose.” In Re Sumpter, 46 Mass. App. Ct. 251, 254 (1999). Here, all the specific activities listed in the definition of petitioning activity must be interpreted in the context of not only the very first sentence of the statute which explicitly states that any claim to be protected must be based on a party’s “exercise of its right of petition under the constitution of the United States or of the commonwealth,” but also the catch-all provision in the definition itself which refers to “any other statement falling within constitutional protection of the right to petition government” Where the Legislature statutorily bracketed the specific items listed in the definition in this way, it would not be reasonable to conclude that §59H protects petitions not grounded in the state or federal constitution.[1]
*111 For the above reasons, we conclude that Zaleznik is not protected by §59H in Hie circumstances of this case, and that, accordingly, it was error to allow his special motion to dismiss pursuant to that statute. Given this conclusion, it is unnecessary to reach the issue of §59H attorney’s fees which is raised by Zaleznik.
2. Zaleznik’s motion to dismiss was allowed in the trial court on the additional ground that the “defendant’s actions [were] privileged as statements made in the course of a judicial proceeding by counsel....” The Supreme Judicial Court has recognized “[t]he public policy of permitting attorneys complete freedom of expression and candor in communications in their efforts to secure justice for their clients.” Sriberg v. Raymond, 370 Mass. 105, 108 (1976). The Court thus considered it “desirable to install a privilege where such statements are made by an attorney engaged in his function as an attorney whether in the institution or conduct of litigation or in conferences and other communications preliminary to litigation.” Id. at 109. The privilege “is absolute ... provides a complete defense even if the offensive statements are uttered maliciously or in bad faith ... [and] protects the maker from any civil liability based thereon.” Doe v. Nutter, McClennen & Fish, 41 Mass. App. Ct. 137, 140 (1996).
Moreover, since 1835, the law in Massachusetts has been that “an action for malicious prosecution could not be brought against an attorney who had commenced litigation against another person unless the attorney commenced the suit without the authority of the named plaintiff or unless the attorney and the named plaintiff had conspired or otherwise knowingly agreed to commence a groundless lawsuit” Beecy v. Pucciarelli, 387 Mass. 589, 592-593 (1982), citing Bicknell v. Dorian, 16 Pick. 478, 490 (1835). In recent years, however, that rule has not exactly received a resounding endorsement by either the Appeals Court or the Supreme Judicial Court In 1981, the Appeals Court stated that “there is sound logic for refusing to recognize the absolute privilege as barring an action for malicious prosecution ...,” Robert L. Sullivan, D.D.S., P.C. v. Birmingham, 11 Mass. App. Ct. 359, 367 n.8 (1981), but did not need to resolve the issue because the complaint in question did not set out the necessary allegations to make out such a claim. Similarly, the Supreme Judicial Court in Beecy v. Pucciaretti, supra, avoided the issue for the exact same reason, but “recognize[d] that there are compelling reasons to abolish these limitations upon malicious prosecution suits against attorneys.” In so doing, the Court noted that
[t]he present view of many courts is that an attorney is neither absolutely immune from liability for malicious prosecution actions nor liable only under the limited conditions enunciated in Bicknell.... Rather, these courts have determined that an attorney may be held liable for malicious prosecution if the claimant pleads and proves that lie was damaged because the attorney prosecuted a proceeding with malice and without probable cause and that the proceeding terminated in the claimants favor.’
Id. at 593 n.7 (Emphasis in original; citations omitted). See also RESTATEMENT, TORTS (SECOND) §674, Comment (d). (“If... the attorney acts without probable cause for belief in the possibility that the claim will succeed, and for an improper purpose,... he is subject to the same liability as any other person.”).
However, what was said in Huot v. Ziter, 14 Mass. App. Ct. 902 (1982) is applicable here. Although the rule in Bicknell may have been “called into question,” and “may have a patina of antiquity, it has not been overruled,” and it is certainly not appropriate for this court to do so. Id. Under the Bicknell rule, Hayes’ complaint was properly dismissed. It was not alleged that Zaleznik acted without the Board’s authority or that he “conspired” with the Board or “otherwise knowingly agreed” to pursue groundless appeals.
*112 The order dismissing this action is affirmed. The plaintiffs appeal is dismissed.
So ordered.

 While the issue is not presented in this case, we do recognize that the protection of §59H may be read to apply to the enlistment by government officials of private citizens to petition a governmental agency. See Baker v. Coxe, 940 F. Supp. 409, 417 (D. Mass. 1996), where the plaintiffs sued employees of the Massachusetts Executive Office of Environmental Affairs (“EOEA”) for wrongfully denying their application for a building permit for a pier project Specifically the plaintiffs alleged that the EOEA defendants organized members of the Massachusetts Audubon Society to request a review of the project by the Massachusetts Secretary of Environmental Affairs. In denying the EOEA defendants’ motion to dismiss under §59H, Judge Saris noted that the “enlistment by government officials of others to petition falls within the broad ambit of the [Massachusetts] anti-SLAPP statutory protection,” but concluded that the plaintiffs’ claim was not based on such enlistment and was instead based on their contention that the project was delayed in retaliation for their own protected activity in opposing environmental legislation. However, accepting arguendo Judge Saris’ interpretation of §59H, under the “enlistment” prong of the definition of petitioning activity, the petitioning involved would still be that of private parties.