Filed 03/17/26

VERMONT SUPERIOR COURT
Chittenden Unit
175 Main Street
Burlington VT 05402
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 25-CV-4318

| | |
|---|---|
| SHAWN DUDLEY,<br>    Plaintiff<br><br>    v.<br><br>CITY OF BURLINGTON,<br>    Defendant | DECISION ON MOTIONS |

## RULING ON DEFENDANT'S MOTIONS TO DISMISS AND TO STRIKE

Plaintiff Shawn Dudley brings this action in connection with several press releases issued by the Burlington Police Department about him in 2023 and 2024. He asserts claims for defamation, negligence, and a violation of his constitutional due process rights, and seeks more than $13.9 million in damages. Defendant City of Burlington has filed both a motion to dismiss pursuant to Rules 12(b)(1) and (6) of the Vermont Rules of Civil Procedure and a special motion to strike pursuant to Vermont's anti-SLAPP statute. In response, Plaintiff seeks to amend his complaint, which the Court allows. The City is represented by Sean M. Toohey, Esq. and Plaintiff is representing himself. For the reasons discussed below, the City's motions are GRANTED.

## Alleged Facts

The following facts are alleged in the Amended Complaint or appear in the documents attached thereto. The Court makes no finding as to their accuracy at this stage of the proceedings. *See Montague v. Hundred Acre Homestead, LLC*, 2019 VT 16, ¶ 10, 209 Vt. 514. The Court does not, however, accept as true "conclusory allegations or legal conclusions masquerading as factual conclusions." *Vitale v. Bellows Falls Union High Sch.*, 2023 VT 15, ¶ 28, 217 Vt. 611 (quotation omitted).

### A.    "Barricaded Hostage Situation" Press Release

On February 25, 2023, the City of Burlington issued a Press Release (Am. Compl., Ex. A) regarding an incident involving Plaintiff Dudley and his son, titled "Agency Assist – barricaded hostage situation in Milton." The press release describes how the Burlington Police Department responded to a "direct request for assistance" from the Milton Police Department involving "[a] man with an arrest warrant . . . barricaded in a residence with a four-year old child." Ex. A at 1. The Burlington press release refers to an attached press release from the Milton Police Department for the specifics of the incident. The Milton press release recites that Milton police received a complaint that Dudley was "refusing to return his four year old son to

the child's mother . . . [who] has sole legal responsibility for the kid." *Id*. at 3. Milton police spent four days attempting to have Dudley voluntarily release the child to the mother. Upon entering the residence, police "encountered several barricades and barriers hindering officers from moving inside the residence." *Id*. After several hours with assistance from neighboring police departments, Plaintiff "was taken into custody for custodial interference, resisting arrest, hindering law enforcement officers and violation of a relief from abuse order." *Id*. The City of Burlington emailed the press release to My Champlain Valley News, which published a news article about it. NBC 5 also published an article about the event.

Dudley claims that this press release "falsely characterized" the event as a "hostage situation" and "stated alleged accusations as fact before any conviction." Am. Compl. ¶ 5. He claims that he "did not hold his son hostage," explaining that he "had filed a Change of Custody Motion and Emergency Motion four days prior to the raid, possessing evidence of child abuse/neglect by the mother (Porschea Sweetser) and her partner (Justin Russell) that was substantiated in Chittenden Family Court." *Id*. ¶ 9. He further explains that he "was acting to protect his child, yet [Burlington] maliciously labeled him a hostage-taker," and claims that the mother's partner had previously held the child hostage for several hours yet *South* Burlington police labelled the incident a mere "domestic dispute." *Id*. ¶ 10.

B.     Knife Threat Press Release

On April 10, 2024, the City of Burlington published a press release stemming from another situation involving Plaintiff. Am. Compl., Ex. F. The press release stated that "officers . . . responded to a report of an individual threatening someone with a knife" and that when they "arrived on scene, the individual threatening someone with a knife was identified as Shawn Dudley." *Id*. The press release continued: "Investigation revealed Dudley brandished two knives at three individuals after a brief disagreement." *Id*. The related probable cause affidavit repeats the same accusations as facts. Am. Compl. ¶ 12. The Vermont Daily Chronicle published an article repeating information from the press release. Am. Compl. ¶ 13; *see also* Ex. H. Plaintiff claims that the statements are false in that they improperly "stat[e] alleged accusations as fact before any trial or conviction." Am. Compl. ¶ 10.

C.     Dog Park/Deadly Weapon Press Release

On October 3, 2024, the City of Burlington published a press release involving another situation involving Plaintiff. Am. Compl. Ex. I. The press release recited that "officers . . . responded to the area of the dog park near the bike path for a fight involving a knife in which one of the parties was described as having blood on them." The press release continued: "Upon arrival, officers located an individual bleeding. Investigation revealed a male suspect caused significant bodily injuries, including a laceration to the victim's chest and wrist. . . . The male suspect was later identified as Shawn Dudley, . . . [who] was taken into custody for aggravated assault." The press release further states: "Additionally, Dudley violated his active criminal conditions of release – cannot possess dangerous or deadly weapons, when he caused serious bodily injuries to the victim with a sharp cutting instrument and was found to be in possession of a folding knife." Several news outlets published articles about the incident, repeating information contained in the press release. Plaintiff claims that the press release "stat[es] alleged

2

accusations as fact before any trial or conviction" and "negligently and maliciously omit[s] critical facts" which he deems "exculpatory evidence." Am. Compl. ¶¶ 15, 19.

### D. Plaintiff's Claims

Based on the three press releases described above, Dudley asserts claims for "defamation of character (libel)," "negligence and gross negligence," and "violation of due process (jury taint)." Am. Compl. ¶¶ 20-27. He claims that the City published false statements about him (i.e., alleging that he held a child hostage, threatened workers with a knife, and stabbed a man) to third parties, that the statements were made with malice, and that the statements constitute defamation per se. As to the negligence claim, he alleges that the City has a "duty to release accurate information to the public and to respect the presumption of innocence," that it breached this duty by "publishing unverified opinions as facts, failing to include exculpatory evidence in press releases," and that this breach caused him damages. Am. Compl. ¶¶ 23-25. As to the due process claim, he alleges a "widespread dissemination of [] false narratives" that has "saturat[ed] the community with false 'facts' of guilt" and "programmed the potential jury pool to view [him] as dangerous," thus "making an impartial trial impossible." *Id*. ¶¶ 26-27.[1]

### Discussion

Preliminarily, the Court notes that Plaintiff's original Complaint named the Burlington Police Department as the defendant rather than the City, included only one claim (for defamation), and was based on only the first press release. Plaintiff has moved to amend his complaint, substituting the City as the proper defendant, adding the negligence and § 1983 claims, and adding more facts based on the second and third press releases. The City argues that the amendment would be futile for the same reasons expressed in its motion to dismiss. For ease of analysis, the Court grants the motion to amend and addresses all claims in the Amended Complaint under the motion to dismiss framework below.

The City moves to dismiss all claims pursuant to Rule 12(b)(1) and 12(b)(6). The City contends that it has sovereign immunity, that this case is an impermissible collateral attack on Plaintiff's criminal charges, that the statements in the press releases were conditionally privileged and true, and that Plaintiff has pled no municipal custom or policy to support a § 1983 action. Because the Court dismisses the claims under Rule 12(b)(6), as discussed below, it does not reach the immunity argument.[2]

---

[1] Dudley also claims that several local news media outlets have violated his constitutional rights to a fair and speedy trial and due process. Am. Compl. ¶¶ 11, 21. Because Dudley has not named any of those outlets as defendants and because they are not state actors, the Court does not address those "claims" any further.

[2] The Court notes, however, that there are problems with the City's immunity argument. In the City's briefing, it seems to conflate the concepts of *state* sovereign immunity and *municipal* sovereign immunity. *See* Mot. to Dismiss at 2-4; Reply at 2-3. Moreover, much of the authority cited by the City relates to specific forms of discretionary function immunity in other states – rather than Vermont's "governmental vs. proprietary" distinction – and is thus inapposite. *See*

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court considers whether "it appears beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." *Davis v. Am. Legion, Dep't of Vt.*, 2014 VT 134, ¶ 12, 198 Vt. 204 (quoting *Alger v. Dep't of Labor & Indus.*, 2006 VT 115, ¶ 12, 181 Vt. 309). The Court "must assume that the facts pleaded in the complaint are true and make all reasonable inferences in the plaintiff's favor." *Montague*, 2019 VT 16, ¶ 10 (citation omitted). The burden on plaintiffs under Vermont law is "exceedingly low" at the pleading stage. *Prive v. Vt. Asbestos Group*, 2010 VT 2, ¶ 14, 187 Vt. 280. Complaints are intended to give enough notice to the defendant to allow a response, but need not lay out every detail of the facts supporting the claim. *See Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 13, 184 Vt. 1 ("The complaint is a bare bones statement that merely provides the defendant with notice of the claims against it."). The goal is to "strike a fair balance, at the early stages of litigation, between encouraging valid, but as yet underdeveloped causes of action and discouraging baseless or legally insufficient ones." *Id*. As such, motions to dismiss for failure to state a claim are "disfavored." *Bock v. Gold*, 2008 VT 81, ¶ 4, 184 Vt. 575. "Nonetheless, where the plaintiff does not allege a legally cognizable claim, dismissal is appropriate." *Montague*, 2019 VT 16, ¶ 11 (citation omitted).

I.      Defamation.

"To state a claim for defamation, a plaintiff must allege the following: (1) a false and defamatory statement concerning another; (2) some negligence, or greater fault, in publishing the statement; (3) publication to at least one third person; (4) lack of privilege in the publication; (5) special damages, unless actionable per se; and (6) some actual harm so as to warrant compensatory damages." *Wolfe v. VT Digger*, 2023 VT 50, ¶ 13, 218 Vt. 408 (quotation omitted). "A defamatory statement is one that tends to tarnish a plaintiff's reputation and expose [him] to public hatred, contempt or ridicule." *Id*. (quotation omitted). "Truth is a complete defense to defamation," though it is "not necessary to prove the literal truth of the accusation in every detail[;] . . . it is sufficient to show that the imputation is substantially true." *Id*. (quotations omitted).

Dudley's defamation claim fails because he does not sufficiently plead either falsity or lack of privilege. "[W]here the plaintiff's allegations in the complaint show the presence of a privilege," a defamation plaintiff must "include in [his] pleadings allegations that would overcome the presence of a privilege." *Skaskiw v. Vermont Agency of Agric.*, 2014 VT 133, ¶ 12, 198 Vt. 187 (citations omitted). Here, Plaintiff's Amended Complaint shows the presence of a privilege. The Restatement recognizes a conditional privilege for the "publication of defamatory matter concerning another in a report of an official action . . . that deals with a matter of public concern . . . if the report is accurate and complete or a fair abridgement of the occurrence reported." *Restatement (Second) of Torts* § 611. "An arrest by an officer is an official action, and a report of the fact of the arrest or of the charge of crime made by the officer in making or returning the arrest is therefore within the conditional privilege covered by this Section." *Id*. § 611, cmt. h.; *see also Skaskiw*, 2014 VT 133, ¶ 9 (noting the Court "frequently ha[s] adopted provisions of the *Restatement (Second) of Torts* with respect to defamation").

---

Reply at 2-3. And the discussion referenced in *Civetti* relates to qualified immunity, which the City does not seek to apply here. *Civetti v. Turner*, 2022 VT 64, ¶ 11, 217 Vt. 411.

Other jurisdictions have recognized a conditional, or qualified, privilege for police statements to the press. *See*, *e.g.*, *Burke v. Town of Walpole*, 405 F.3d 66, 95 (1st Cir. 2005) (noting that "several jurisdictions have recognized, either by statute or by judicial decision, a conditional privilege for statements made by the police to members of the press or the public"); *Lanier v. Higgins*, 623 S.W.2d 914, 916 (Ky. Ct. App. 1981) (police chief interviewed by television station "was not clothed with an absolute privilege but rather with a special or conditional privilege"); *Trentecosta v. Beck*, 703 So. 2d 552, 564 (La. 1997) (qualified privilege for "fair reporting of investigations or arrest" may be "available to . . . troopers in their role as law enforcement officers reporting the facts of an investigation and a resulting arrest to the press and, in turn, to the public"); *Peterson v. City of Mitchell*, 499 N.W.2d 911, 915-16 (S.D. 1993) (holding that police were entitled to statutory qualified privilege in issuing press release).[3]

Accordingly, Dudley had to allege facts that would overcome the privilege. A "conditional privilege is abused, and becomes ineffective, if the defendant acted with malice." *Skaskiw*, 2014 VT 133, ¶ 11. The privilege can be overcome by one of two forms of malice: "(1) conduct manifesting personal ill will, reckless or wanton disregard of plaintiff's rights, or carried out under circumstances evidencing insult or oppression or (2) knowledge of the statement's falsity or with reckless disregard of its truth." *Id*. (quotation omitted). Here, the Court cannot infer malice from any of Plaintiff's allegations, which are "not sufficient to defeat the conditional privilege." *Id*. ¶ 14.

In his Amended Complaint, Dudley alleges that the statements in the press releases were "made with malice" because the City "knew or should have known the 'hostage' label was false based on the charges actually filed, and knew the 'assault' narrative was contradicted by witness statements[]." Am. Compl. ¶ 21. As discussed below, however, the "hostage" label was not false. Simply because the police did not charge Dudley with a crime called "hostage-taking" that tracked the exact definition of "hostage" does not mean that describing the event colloquially as a "hostage situation" was false. Dudley was, in fact, charged with custodial interference, which encompasses hostage situations. *See* 13 V.S.A. § 2451(a). Moreover, the fact that the police knew that its narrative of the charged crime was contradicted by witness statements does not equate to malice. Virtually all crime narratives may be contradicted to some extent by witnesses. Indeed, that is the very purpose of a trial – to sort out factual disputes. Plaintiff has not overcome the conditional privilege.

The defamation claim also fails as to all three press releases for the additional reason that Dudley has not adequately alleged falsity. As to the first press release, he primarily takes issues with the use of the term "hostage" to describe the situation. The term "hostage" is defined generally as "[a] person held by one party in a conflict as security that specified terms will be met by the opposing party" or as "[o]ne that is under the constraining control of another."

---

[3] The Court notes that some of these jurisdictions have relied on *Restatement (Second) of Torts* § 598A: "An occasion makes a publication conditionally privileged if an inferior administrative officer of a state or any of its subdivisions who is not entitled to an absolute privilege makes a defamatory communication required or permitted in the performance of his official duties." Thus, in additional to § 611, the Court concludes that § 598A provides an alternative rationale for applying a conditional privilege here.

5

*American Heritage Dictionary* (5th ed.) (online); *see also Black's Law Dictionary* (12th ed. 2024) (defining "hostage-taking" as "[t]he unlawful holding of an unwilling person as security that the holder's terms will be met by an adversary"). In his Amended Complaint, Dudley denies holding his son "hostage," but then admits that he held him unlawfully to "protect" him from alleged abuse and neglect from the mother and her partner. He does not allege that he had legal custody of his son at that time; in fact, he alleges only that he had filed an emergency motion in family court seeking to change custody a few days prior. Simply filing a motion to change custody did not give him the legal right to refuse to return the child to his mother. Thus, the police department's description of the incident as a "hostage situation" was not false.

As for the other two press releases, Dudley alleges that they contain "false" statements because they improperly stated "alleged accusations as fact" before any trial or conviction and that they omitted exculpatory evidence. When the alleged "false" statements are read in the context of the entire press releases, however, the statements are not false. The only rational takeaway from the press releases is that they merely report that Dudley was arrested and charged with certain crimes, not that he was convicted of or definitely committed the alleged crimes. *See*, *e.g.*, *Foley v. Lowell Sun Publ'g Co.*, 533 N.E.2d 196, 197 (Mass. 1989) ("When the statement is read in the context of the article as a whole, its clear meaning is to report that [plaintiff] was arrested for assaulting an officer – and not that he either had been convicted of the offense or had actually committed the assault."). Dudley does not deny that he was arrested or charged with the crimes listed. Moreover, "[s]tatements about crimes are often technically incorrect but substantially true," which "means the gist or sting of the defamation must be true even if details are not." *Dobbs' Law of Torts* § 533 (2d ed.). Even assuming that part of the press releases could be interpreted as "technically incorrect," the gist of the press releases – that Dudley was arrested and charged with particular crimes – is substantially true. Accordingly, Plaintiff has not adequately pled a "false and defamatory statement concerning another." *Wolfe*, 2023 VT 50, ¶ 13.

II.      Negligence.

Dudley's negligence claim rests on essentially the same factual allegations underlying his defamation claim. He alleges that the City has a "duty to release accurate information to the public and to respect the presumption of innocence," that it breached this duty by "publishing unverified opinions as facts, failing to include exculpatory evidence in press releases," and that this breach caused him damages. Am. Compl. ¶¶ 23-25. Additionally, he appears to seek traditional defamation damages for his negligence claim: "Defaming the Plaintiff five separate times in approximately 18 months is beyond any level of negligence and proves ill-intent and a malicious motive to defame the Plaintiffs credibility and reputation." *Id*. ¶ 26.

The Court concludes that Dudley's negligence claim is nothing more than a defamation claim disguised as negligence. It is well-established that a "plaintiff is not permitted to avoid defenses to a defamation claim by challenging the defamatory statements under another doctrine." *Guzhagin v. State Farm Mut. Auto. Ins. Co.*, 566 F. Supp. 2d 962, 969 (D. Minn. 2008); *see also Vackar v. Package Mach. Co.*, 841 F. Supp. 310, 315 (N.D. Cal. 1993) ("[P]laintiffs may not avoid the strictures of defamation law by artfully pleading their defamation claims to sound in other areas of tort law."); *Apostle v. Booth Newspapers, Inc.*, 572 F. Supp.

897, 906 (W.D. Mich. 1983) (holding that, "where the same factual basis is used to make both defamation and negligent infliction of emotional distress claims, and where a qualified privilege applies to the publication, as a matter of law Plaintiffs' negligence claim cannot survive. "); *Akarah v. Ohio Dep't of Rehab. & Corr.*, 253 N.E.3d 712, 720-21 (Ohio Ct. App. 2024) (same); *Wagner v. Allen Media Broad.*, 3 N.W.3d 758, 784–85 (Wis. Ct. App. 2024) (same). Accordingly, the conditional privilege that bars Dudley's defamation claim also bars his "negligence" claim.

III.　　Due Process.

Dudley fails to state a valid due process claim. 42 U.S.C.A. § 1983 provides a right of action where a "person," under color of state law, subjects another person to the deprivation of any federal constitutional rights.[4] A municipality can be liable under § 1983 "if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978)). A plaintiff may satisfy the "custom, policy, or usage" requirement in one of four ways:

> The plaintiff may allege the existence of (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (citations omitted). Dudley has pled no such "custom, policy, or usage" by the City as required to establish *Monell* liability. Accordingly, his § 1983 claim fails as a matter of law.

The Court also notes that, for the first time in his December 19, 2025 filing (which constitutes his Reply in support of his motion to amend, his Sur-Reply in further opposition to the motion to dismiss, and his opposition to the motion to strike), Dudley asks the Court to take the extraordinary step of overturning his convictions in four separate criminal docket numbers, ostensibly on the basis of "multiple constitutional injuries that . . . tainted all" of his criminal proceedings. Pl.'s Mem. at 14 (filed Dec. 19, 2025). Even assuming that the convictions in those dockets are related to the allegations underlying his Amended Complaint, a party's proper remedy is to challenge those convictions in a direct appeal or a petition for post-conviction relief

---

[4] While Plaintiff does not cite to § 1983 in his Amended Complaint, his December 19, 2025 memorandum clarifies that his due process claim is brought pursuant to § 1983.

("PCR"). Dudley sought no such relief in his Amended Complaint, and this action is not a PCR.[5]

    IV.    <u>Special Motion to Strike</u>.

The City has separately moved to strike the Amended Complaint as a "Strategic Lawsuit[] Against Public Participation" ("SLAPP"). Under Vermont's anti-SLAPP statute, a SLAPP suit is "an action arising from defendant's exercise, in connection with a public issue, of the right to freedom of speech or to petition the government for redress of grievances under the U.S. or Vermont Constitution." 12 V.S.A. § 1041(a). The statute authorizes the defendant in an alleged SLAPP suit to bring a special motion to strike within 60 days after the filing of the complaint. *Id*. § 1041(b). The motion is decided on the "pleadings and supporting and opposing affidavits," *id*. § 1041(e)(2), and must be granted unless the plaintiff shows that "the defendant's exercise of his or her right to freedom of speech and to petition was devoid of any reasonable factual support and any arguable basis in law" and "the defendant's acts caused actual injury to the plaintiff." *Id*. § 1041(e)(1)(A), (B).[6]

"[T]he anti-SLAPP statute represents an 'attempt[ ] to define the proper intersection between two constitutional rights – a defendant's right to free speech and petition and a plaintiff's right to petition and free access to the courts.'" *Polak v. Ramirez-Diaz*, 2025 VT 9, ¶ 18, 336 A.3d 383 (quoting *Felis v. Downs Rachlin Martin PLLC*, 2015 VT 129, ¶ 41, 200 Vt. 465). Thus, "§ 1041 should be construed as limited in scope and . . . great caution should be exercised in its interpretation." *Id*. (quotation omitted).

The Court must first determine whether this action is a SLAPP suit under the statute, that is, whether the action "ar[ose] from" the defendant's exercise of its right to free speech in connection with a public issue. 12 V.S.A. § 1041(a). That threshold requirement may be satisfied by "any written or oral statement concerning an issue of public interest made in . . . a

---

[5] The Court further notes that most, or all, of this action appears to be an impermissible collateral attack on Plaintiff's criminal cases. *Cf. Bd. of Med. Prac. v. Perry-Hooker*, 139 Vt. 264, 267, 427 A.2d 1334, 1336 (1981). But to the extent he alleges that his arrests lacked probable cause or were otherwise defective, Dudley's proper course of action is to raise those arguments in his criminal cases. Similarly, to the extent his due process claim asserts that the City's alleged defamation has "ma[de] an impartial jury trial impossible" by "taint[ing]" the jury pool, Am. Compl. ¶¶ 26-27, that is an issue to be raised in his criminal cases before the jury is drawn. Indeed, the proper remedy "if the court is satisfied that there exists in the unit where the prosecution is pending so great a prejudice against the defendant that he or she cannot obtain a fair and impartial trial there" is a motion for change of venue in criminal court. V.R.Cr.P. 21(a). Similarly, the proper remedy for a defective plea is not a civil action for damages, but a motion to withdraw the plea under Criminal Rule 32(d) or the postconviction relief procedure in 13 V.S.A. §§ 7131-37.

[6] The statute requires "a hearing on a special motion to strike." 12 V.S.A. § 1041(d). Here, however, neither party has requested a hearing, and the absence of a hearing would not prejudice either party. In any event, the statute does not require an *evidentiary* hearing. *See Talandar v. Manchester-Murphy*, 2024 VT 86, ¶¶ 38-40, 331 A.3d 1093.

place open to the public." *Id*. § 1041(i)(4). This determination typically depends on the nature of the allegations in the challenged claim. *See Jenkins v. Miller*, No. 2:12-CV-184, 2017 WL 4402431, at *32 (D. Vt. Sept. 29, 2017); *Rand Res., LLC v. City of Carson*, 433 P.3d 899, 907 (Cal. 2019); *Marabello v. Boston Bark Corp.*, 974 N.E.2d 636, 641-42 (Mass. 2012). The City, as the party moving to strike Plaintiff's claims, has the burden to satisfy this threshold requirement. *Cornelius v. The Chronicle, Inc.*, 2019 VT 4, ¶ 8, 209 Vt. 405.

The City has satisfied its burden in this case. The claims brought against the City (defamation, negligence, and § 1983) all stem from the City's issuance of three press releases announcing Plaintiff's arrests. The press releases are essential to the claims, as the claims could not be stated without reference to the press releases. *Accord Apache Corp. v. Apollo Expl., LLC*, No. 11-21-00295-CV, 2023 WL 3511262, at *5 (Tex. App. May 18, 2023). And the issuance of a press release is an example of the exercise of free speech. *See, e.g.*, *Patton v. O'Bannon*, 2011-0989, 2011 WL 6754099, *3 (La. Ct. App. Dec. 21, 2011) (finding "no error in the district court's determination that the issuance of a press release by the district attorney's office . . . constituted acts in furtherance of the defendants' free speech rights in connection with a public issue"); *see also Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 446 (2d Cir. 2001) ("Even dry information, devoid of advocacy, political relevance, or artistic expression, has been accorded First Amendment protection.") (collecting cases); *Scruggs v. City of Bowie*, No. 7:14-CV-00123-O, 2015 WL 13450692, at *5 (N.D. Tex. Dec. 17, 2015) (defendant established that "press release is a matter of public concern, and . . . [plaintiff's] suit is based on . . . exercise of [] right to free speech").[7]

Moreover, our Supreme Court has observed, generally, that "matters connected to law enforcement investigation, public safety, and crime in the community are of public concern." *Talandar*, 2024 VT 86, ¶ 43 (rejecting plaintiff's claim that defendant's report to police that plaintiff assaulted her did not concern a public issue) (quotation omitted); *Wolfe*, 2023 VT 50, ¶ 22 (holding that four newspaper articles challenged by plaintiff involved speech in connection with a public issue because they described plaintiff's threats toward Speaker of Vermont House of Representatives, his arrest at Statehouse, and his resulting criminal charges); *Cornelius*, 2019

---

[7] The Court acknowledges that the question of whether a government entity is entitled to the protection of the anti-SLAPP statute – not raised by either party here – is a complicated and unsettled issue involving a split of authority in other states. *Compare Vargas v. City of Salinas*, 205 P.3d 207, 217 (Cal. 2009) *and Gontmakher v. City of Bellevue*, 85 P.3d 926, 931 (Wash. Ct. App. 2004) *with Crosby v. Town of Indian River Shores*, 358 So. 3d 444, 446-47 (Fla. Dist. Ct. App. 2023), *Clark Cty. v. 6635 W Oquendo LLC*, 544 P.3d 900, 903 & n.3 (Nev. 2024), *and Hayes v. Zaleznik*, 2001 Mass. App. Div. 107 (Dist. Ct. 2001). The related question of whether government entities, such as municipalities, enjoy First Amendment rights is also unsettled, *see United States v. Am. Libr. Ass'n*, 539 U.S. 194, 210-11 (2003) (acknowledging but declining to decide question); *Tennessee v. U.S. Dep't of Agric.*, 665 F. Supp. 3d 880, 919-21 (E.D. Tenn. 2023); *New Mexico v. McAleenan*, 450 F. Supp. 3d 1130, 1207-10 (D.N.M. 2020); *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 701 F. Supp. 2d 568, 598 (S.D.N.Y. 2010), and is further complicated by the so-called "government speech doctrine." *See Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467 (2009). Because neither party has raised the issue, the Court does not reach it here.

VT 4, ¶¶ 1-2 (newspaper articles reporting that plaintiff and his brother threatened a parole officer and had been deemed a possible threat by law enforcement due to their lengthy criminal history and increasingly violent and erratic behavior, describing brothers' involvement in killing of an individual, and describing plaintiff's arraignment on charges of aiding in escape of his brother involved a public issue). While the Court has also refused to create a "blanket exemption" for reports of criminal activity, *see Polak*, 2025 VT 9, ¶¶ 24, 28 (defendants' statements to police regarding alleged assault and gun threat were not made in a connection with a public issue where no arrests were made, no charges were filed, and there were no news reports about dispute), the press releases here fall squarely within the type of reports of criminal activity that are matters of public concern. Dudley was arrested and charged multiple times, and several news organizations deemed the reports newsworthy enough to publish articles about the events.

Because the City has met its burden under the statute, the burden now "shift[s] to [P]laintiff" to demonstrate that the City's press releases were "'devoid of any reasonable factual support and any arguable basis in law.'" *Cornelius*, 2019 VT 4, ¶ 15 (quoting 12 V.S.A. § 1041(e)(1)(A)). Given that the claims cannot survive a motion to dismiss under Rule 12(b)(6), Dudley cannot meet his burden. Specifically, as discussed above, Dudley has not adequately pled that the alleged defamatory statements in the press releases were false. The press releases report that he was arrested and charged with crimes, and Dudley does not deny that he was arrested or charged with the crimes listed. Thus, he cannot show that the press releases were "devoid of any reasonable factual support and any arguable basis in law." 12 V.S.A. § 1041(e)(1)(A). Accordingly, the Court must grant the City's special motion to strike.

Order

Plaintiff's motion to amend is GRANTED. The City's motion to dismiss (Mot. # 2) is GRANTED as to the entire Amended Complaint. The City's special motion to strike the Amended Complaint under the anti-SLAPP statute (Mot. # 3) is also GRANTED.

If the City is seeking its "costs and reasonable attorney's fees," it shall file an appropriate supporting affidavit within 14 days. *See* 12 V.S.A. § 1041(f)(1).

Electronically signed on March 16, 2026 at 4:30 PM pursuant to V.R.E.F. 9(d).

Megan J. Shafritz
Superior Court Judge